UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LATEAA JAMES, | § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 3:15-CV-297 |
| CITY OF WEST COLUMBIA, *et al*, | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Lateaa James filed this lawsuit against the City of West Columbia, City Manager Debbie Sutherland, Lieutenant Darryl R. Tiner of the West Columbia Police Department, Officer Michael Glaspie of the West Columbia Police Department, and Officer Pena of the West Columbia Police Department.

James' live pleading is her Fourth Amended Complaint. Dkt. 45. She alleges that, on May 29, 2009, when she was 13 years old, her mother brought her to the West Columbia Police Department to seek help from police officers "in convincing James to take her psychotropic medication." But, according to James, "[t]he afternoon ended with Lateaa James being arrested, handcuffed, battered, and tased a minimum of six (6) times." James therefore brought this lawsuit, asserting state law causes of action individually against Officer Tiner for malicious prosecution, false imprisonment, false arrest, intentional infliction of emotional distress, libel, and slander, as well as federal and state law claims against the City and Police Department under 42 U.S.C. § 1983, negligence and gross negligence. She complaints of assault, excessive force, wrongful

seizure, deprivation of due process, deprivation of medical attention, violations of First Amendment freedom of speech, abuse of office, official oppression, and negligence under the Texas Tort Claims Act. She also also alleges that the Police Officers and City employees then wrongly pressed criminal charges against her, in an act of malicious prosecution, and that these charges "were false and placed on her in an effort to cover up their unconstitutional actions."

This Court has dismissed most of the claims alleged by James, with the exception of one: her excessive force claim against Defendant Darryl Tiner in his individual capacity. Dkt. 44. Now, Defendant Tiner has filed a motion for summary judgment, particularly focusing on his assertion of qualified immunity. Dkt. 78.

After considering the motion, the response, the evidence in the summary judgment record, and the record of this case as a whole, the Court finds that there is no genuine dispute of material fact and that Defendant Tiner's motion for summary judgment should be **GRANTED**.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue or dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the movant demonstrates the

absence of a genuine dispute of material fact, the burden shifts to the non-movant to provide "specific facts" showing the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes County*, 678 F.3d 344, 348 (5th Cir. 2012); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Though courts are to draw all reasonable inferences in favor of the nonmovant, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). Instead, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (emphasis in original).

Additionally, allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995) (for the party opposing the motion for summary judgment, "only evidence—not argument, not facts in the complaint—will satisfy the burden"), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (noting that an employee's "self-serving generalized testimony stating her subjective belief that discrimination occurred ... is simply insufficient to support a jury verdict in plaintiff's favor"); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) ("Summary judgment, to be sure, may be appropriate, '[e]ven in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)) (alteration in original)).

Further, as noted above, parties have the obligation to specifically point out the evidence upon which they rely. Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A); *Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013). Under Rule 56(c)(3), "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The Fifth Circuit has explained that, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see also Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (concluding that a deposition "was never made part of the competent summary judgment record before the district court" because the party opposing summary judgment "failed to designate, or in any way refer to, the deposition as the source of factual support" for its response to the summary judgment motion).

### APPLICABLE LAW

Section 1983 enables persons who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by the actions of a person or entity operating under color of state law to seek redress from those state actors responsible for the deprivations. 42 U.S.C. § 1983. But qualified immunity insulates those government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### A. Summary Judgment: Qualified Immunity

As the Fifth Circuit recently noted, "the Supreme Court "mandated a two-step sequence for resolving government officials' qualified immunity claims."" *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727–28 (5th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). The court must determine (1) "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* "A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (citing *Hanks v. Rogers*, 853 F.3d 738, 746–47 (5th Cir. 2017)).

The Supreme Court recently reviewed the law of qualified immunity. "'Clearly established" means that, at the time of the officer's conduct, the law was " 'sufficiently clear' that every 'reasonable official would understand that what he is doing' " is unlawful. *D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (internal citations omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* "This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Indeed, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff

seeks to apply. Otherwise, the rule is not one that 'every reasonable official'" would know. *Id.* Further, there must be a "high degree of specificity" in that the rule must clearly apply to the "particular circumstances" the officer confronts. *Id..* And the Court should look to the "settled law" at the time—in this case, May 2009. *Id.* ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law.'"). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (citing *Pearson*, 555 U.S. at 236, 129 S.Ct. 808). However, deciding the two prongs in order "is often beneficial." *Id.*

Once an official raises the defense of qualified immunity, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).[1] Still, at the summary judgment stage, this Court must "view the facts in the light most favorable to ... the nonmoving party." *City & Cty. of San Francisco v. Sheehan*, —— U.S. ——, 135 S.Ct. 1765, 1769, 191 L.Ed.2d 856 (2015). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477

---

[1] "When Defendants raise a qualified immunity defense, the usual summary judgment burden of proof is altered." *Carter v. Diamond URS Huntsville, LLC*, CV H-14-2776, 2016 WL 8711499, at *3 (S.D. Tex. Sept. 30, 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "Once the defense is raised, the burden immediately shifts to the plaintiff, who must rebut the defense by establishing a genuine issue of material fact as to whether the official's purported wrongful conduct violated clearly established law." *Id.* To meet this burden, the plaintiff must allege facts showing that the defendants committed a constitutional violation under the current law. *Id.* (citing *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)).

U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the Court is to view the evidence in the light most favorable to the non-movant, the non-movant must still "come forward with specific facts indicating a genuine issue for trial" and cannot merely rely on the allegations in the complaint. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). Further, in this context, it is the plaintiff who has the burden to demonstrate that the relevant law was "clearly established in this area on the date of the incident." *Lincoln v Turner*, 874 F.3d 833 (5th Cir. 2017); *Thomas v. Williams*, --- Fed. App'x ----, 2018 WL 671141 (5th Cir. 2018) (on summary judgment, "[n]otwithstanding the general principle that [courts] must view the evidence in the light most favorable to the nonmoving party, the plaintiffs still bear the burden to show that [an officer] is not entitled to qualified immunity.").

**B. Excessive Force Standards**

"[T]o state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008) (citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)). The objective reasonableness of the force "depends on the facts and circumstances of the particular case," *id.* at 501(citing *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)), and courts are to look at "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *id.* (*quoting Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d

443 (1989)). Where a suspect "committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command," the *Graham* factors do not justify force used against him. *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012). This is a "necessarily fact-intensive" inquiry, and "whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Griggs* v. *Brewer*, 841.F3d 308, 313. As the Fifth Circuit has noted, "'inquiries regarding whether a use of force was 'clearly excessive' or 'clearly unreasonable' . . . are often intertwined . . . .'" *Darden*, 880 F.3d at 728.

### C. James' Allegations: Fourth Amended Complaint

James alleges that she was 13 years old on the day that her mother brought her to the West Columbia Police Department, and that she was "in an agitated state and [had] refused to take her medication." While in Tiner's office, James yelled "Fuck you!" twice, once to her mother and once to Tiner, and she walked out of Tiner's office and out of the police station. James alleges that Tiner followed her into the parking lot, where she again yelled "Fuck you!" at him before climbing into the front passenger seat of her mother's parked car. James alleges that Tiner "lost his temper," followed her "in an attempt to 'gain control of her," and "began to grab at her," while she "attempt[ed] to get away from him," leaning to driver's side of the car. James alleges that Tiner continued to grab her legs and feet, in an effort to take her out of the car, and she "started flailing her legs to avoid being pulled out of the car." She alleges she was "terrified and began screaming" as Tiner and other officers "were recklessly assaulting her trying to pull her out of the car. . . . She couldn't understand why she was being forcibly removed from the car." James

alleges that Tiner then used a Taser to "drive stun" her three times on her left thigh, and she was taken out of the car, handcuffed, and brought back into the station. Once inside the station, James alleges that Tiner again used a Taser on her three more times, even though she was handcuffed and seated in a chair in his office. She alleges that she "had prong marks singed into her left thigh after the incident," and that she was "later seen by a doctor who noted her physical injuries." She contends that Tiner's use of the Taser was wholly unjustified and "there was absolutely no reason for Defendant Tiner to go and attempt to remove her from the car other than the fact that he was angry about her cursing at him." Further, she alleges that she suffered "great pain with both temporary and permanent injuries, and emotional distress."

### D. Tiner's Motion for Summary Judgment

Tiner has now moved for summary judgment on several grounds. Most notably, he contends that he is entitled to summary judgment on his defense of qualified immunity because there is no genuine dispute of material fact as to whether he used excessive force. First, he contends that James has failed to show that she sustained an injury that was "greater than de minimis." Next, he contends that the force allegedly used was not "excessive," nor was it unreasonable under the circumstances. Tiner also contends that, even if this Court finds that there is a genuine dispute of material fact as to whether the force was excessive, he is entitled to summary judgment because his actions did not violate clearly established law at the time. (Dkt. 78).

Tiner's motion for summary judgment includes several exhibits, including his own signed declaration, and a copy of a Taser information log showing a that a Taser with the

serial number of X00-417923 was fired six times on May 29, 2009---four times in nine minutes between 12:19 p.m. and 12:28 p.m., and twice in two minutes at around 2:45 p.m. later that afternoon. Tiner's declaration explains that the four firings at noon related to James, while the later two firings did not. Tiner's declaration explains that, even before James and her mother came into the police station that day, he had interacted with James before, having responded to a call in which she had assaulted and punched her mother, and that other officers had reported James had assaulted her mother and sister. Tiner describes James as being ""very large in build" and he states, "[he] knew from prior experience with James that [the medication] dispute may evolve into an incident of family violence." While she was in his office, Tiner states that James was "agitated" and "appeared as if she was prepared to attack someone." When James left the office and went to go sit in her mother's car, Tiner feared "family violence would likely occur." Tiner states that James kicked and hit him, repeatedly, and that this both escalated his concern about possible violence and provided probable cause to arrest her. Despite his repeated instructions to stop assaulting him, and to get out of the car, James stayed in the car and continued to resist arrest. Another officer then handed Tiner a Taser "with the cartridge removed," and Tiner used it on James' clothed upper thigh four times, each time for five seconds or less, and each time waiting to see if James would become compliant. Eventually, after the fourth time, James was handcuffed and taken into the station. Tiner specifically denies that he used any force at all on James after she was handcuffed. Tiner's declaration explains why he used the Taser and his belief that other methods of compliance would not have been appropriate.

### E. James' Summary Judgment Response

James' response to Tiner's motion provides three unsworn and unauthenticated documents as her own summary judgment evidence. Dkt. 89.[2] James provides: 1) a copy of a newspaper article; 2) an undated photograph showing the back left thigh of an unidentified, heavy-set female; and 3) notes from a medical appointment James had with "Richard C. Erickson, D.O." on June 10, 2009.

The June 10, 2009 notes appear to show that, after complaining of pain in her right hand, and during an examination of her hand, James stated that she had previously been "Tasered by police in left thigh area" at some time in the last, and the notes recorded "LEFT POSTERIOR THIGH shows some small marks from Taser but not [sic] problem noted." No follow-up treatment for the thigh was recommended, and no other mention was made of her thigh.

James' response also points to parts of Tiner's summary judgment evidence, including various statements she made in her deposition. The Court has reviewed the particular lines cited and briefly summarizes them here. At the time in question, James had a diagnosis of mental health issues and a documented history of family violence that had previously required intervention from the West Columbia Police Department. James admitted she had been committed to juvenile detention on several occasions for violence against her mother and older sister, including using a kitchen knife as a weapon. On May

---

[2] The Court gave notice that it would consider Tiner's motion for summary judgment on June 29, 2017. Dkt. 85. James filed her response to Tiner's motion on June 28, 2017. Dkt. 89. Two days later, James also filed an "Amended Response" (Dkt. 90) and a "Corrected Response" (Dkt. 91). But these were filed after the submission date, and without leave of Court. Accordingly, the Court declines to consider them.

29, 2009, James was released from juvenile detention into the custody of her mother, and additional medication was prescribed for her upon her release. James, however, refused to take the medication. Her mother therefore decided to take her to the West Columbia Police Station to seek assistance.

James stated that her mother spoke with Defendant Tiner, "explain[ing] to him the whole situation, why we there there." Tiner then spoke to James, explaining the importance of the medication, but also telling her that "he can't do anything but talk to me [and] [h]e can't force me to take it." James stood to leave. When Tiner instructed her to sit down, she replied, "Fuck you," and walked out of the police station. James went to her mother's car in the parking lot, to sit in the front passenger seat. Tiner followed her to the parking lot, and James states that he held the door of the car open to prevent her from closing it. Tiner instructed James to get out of the car and come back into the police station. James admits that she refused, and she says that Tiner first grabbed her shoulder, and then, when she refused to move, he grabbed her feet and legs while she kicked and cursed at him. James admitted at her deposition that she kicked and cursed at Tiner when he tried to take her out of the car. Other officers then came out to the parking lot, and James testified that one of them gave Tiner a Taser. According to James, "Tiner looked me dead in my eyes and me that if I didn't get out of the fucking car he was going to tase my ass." James says that Tiner then placed the Taser on her left thigh and activated it repeatedly, ignoring her requests for another officer to take her out of the car instead. James stated that, after being shocked several times, she eventually "gave up" let Tiner and several officers take her out of the car, feet-first. James was handcuffed and brought

into the police station. Inside, James complained of her treatment, "cussing" at Tiner and the other officers. James states that Tiner again told her to be quiet, but she replied "No, [you] can kiss my ass." According to James, Tiner then again used a different Taser on her several times, even though she was handcuffed and seated in a chair, "like in my lower back and like, just all over."

## ANALYSIS

James' response to Tiner's motion for summary judgment contends that Tiner "knew his actions were unlawful" because "no reasonable officer would be unaware that you cannot just assault a minor for no good and lawful reason." And James contends that "the unreasonable use of excessive force against a person not suspected of criminal activity violates well established [sic] federal law." But the case she cites, *Hogan v. Cunningham*, 722 F.3d 725 (5th Cir. 2013), is not on point with the facts of this lawsuit. In *Hogan*, the Fifth Circuit found that officers who tackled a plaintiff they believed was resisting arrest did not use excessive force. *Id.* at 734.

Similarly, James' response relies upon her repeated assertions that she had committed no crime, that she was not one who initiated physical contact, and that any physical resistance she offered was justified in light of Tiner's improper use of force against her. But the uncontroverted summary judgment evidence shows that Tiner knew James had a documented history of family violence against her mother and sister, and that James was physically capable of harming people older than she was; that James began her encounter with Tiner as "agitated," quickly became verbally combative and noncompliant, and escalated to physically combative; and that, during his interactions

with her, Tiner came to believe that James posed a present danger to herself and others. The undisputed evidence also shows that Tiner used escalating force to convince James to get out of the car and comply with his instructions, first grabbing James' shoulder, then legs, then finally using the Taser on her to gain compliance and ensure her own safety and the safety of others. The Taser was used in "drive stun" mode to deliver short, targeted bursts into James' clothed thigh, with Tiner stopping after each burst. James herself admitted during her deposition that she failed to comply with each of Tiner's instructions to get out of the car, only complying after the fourth burst. Once she was out of the car, James complains of being handcuffed, but she does not bring forth any facts that would show the application of handcuffs in these circumstances was inappropriate. After considering the summary judgment evidence, in light of the circumstances, the Court finds that there is no genuine dispute of material fact as to whether the actions James alleges Tiner took in the parking lot (*i.e.*, seizing James's shoulder in the car; seizing James' legs and feet to remove from from the car; each use of the Taser on James' leg while she was in the car; and handcuffing James in the parking lot) were "excessive force."

Next, the Court addresses James' allegation that Tiner used a Taser on her after she was handcuffed in the police station. Here, James relies on *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) and *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008). Tiner's motion for summary contends that all of James' excessive force claims fail because there is no evidence to show that her injuries were more than de minimis. Tiner appears to argue that James should be required to show "substantial injury," but the Fifth Circuit has

stated that "we no longer require 'significant injury' for excessive force claims." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005)). In response to this motion, James pointed only to her statements that she was tased in Tiner's office, i.e., Tiner used the Taser on her several times, all over her upper torso, causing her to "jerk." But she does not point to any evidence about the injury or harm she sustained thereby, nor does she described any physical symptoms or sensations, any physical damage or marks, or even state that she cried out. Some injury is required in this "fact-specific" analysis. At this summary judgment stage, the Court construes the summary judgment evidence and draws all justifiable inferences in James' favor. But it cannot create the evidence for her. *See, e.g., Martinez v. Day*, 639 Fed. App'x 278, 280 (5th Cir. 2016) (affirming summary judgment for defendants, even though plaintiff stated in declaration that officers pepper sprayed, tased, and beat him while he was handcuffed, noting he "failed to adduce any evidence showing [he] suffered any cognizable unjures as a result of force allegedly used by the Defendants, and a plaintiff alleging an excessive force violation must show that [he] has suffered 'at least some injury.'"); *Lampkin v. Dean*, No. 6:15cv496, 2017 WL 1371057 (E.D. Texas, April 17, 2017).

Even if the Court is mistaken, and Tiner did indeed use excessive force, that is not the end of the analysis. James must also show that there is no genuine dispute of material fact that the right to be free from the degree of force used was clearly established and that it would have been clear to a reasonable officer at the scene. See, e.g., Hogan v. Cunnigham, 722 F.3d 725 (5th Cir. 2013). In this case, James has not met her burden of

showing that the law was clearly established in May 2009 such that a reasonable police officer would have known that the relevant levels of force, when used against an "agitated" minor with a documented history of violence against adults, and when officers feared that she would harm herself or others and sought to gain control, were "excessive" or unreasonable.

## CONCLUSION

For the foregoing reasons, after considering the summary judgment record and applying the applicable standards under relevant law in this qualified immunity case, the Court finds that Defendant Tiner's motion for summary judgment should be **GRANTED**, and James' claims against Tiner, the sole remaining plaintiff in this case, should be **DISMISSED**.

**ALL OTHER PENDING MOTIONS ARE DENIED.**

SIGNED at Galveston, Texas on February 21 2018.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE